Dorothea E. Donaldson, J.
In this claim for damages for personal injuries, pain and suffering and loss of wages by claimant Marion G. Robotham and for medical care and attention and loss of services sustained by claimant George Robotham, claimants contended that the negligence of the State was predicated on the existence of a single interior .step on June 13, 1964 on the premises of Page Hall, one of the buildings owned, operated and maintained by the State University of New York in the City and County of Albany. It was alleged that a single interior step violated the provisions of the Standard Building Code of the State of New York relating to the construction of buildings, as well as the provisions of paragraph 7(c) of section 604 of the National Board of Fire Underwriters Code, and of subdivision i of section C 212-4.1 of the State Building Construction Code. The claim was timely filed and not submitted to any other court or tribunal for determination.
Page Hall was a place of public assembly, as defined under subdivision 12 of section 2 of the Labor Law. The Hall was erected in 1929 although the building plans related thereto were promulgated in 1927. Rule 36, “ State Standard Building Code for Places of Public Assembly”, as amended, effective July 1, 1957, contains .section 6.9.4, subdivision d, which .states: “No flight of less than three risers shall be used except to overcome differences in floor level elsewhere than in exitways ”, and section 6.15, subdivision b, which states, in parit: “ Level platforms or landings .shall be provided at points of access and change of direction.” It should also be noted that section 6.18, “ Exit Signs ” refers to the height of a sign with the word “ Exit ” in plain block letters which ‘ ‘ shall be at least 6 inches high, except that the letters of internally illuminated exit signs may be not less than 4% inches high.” (12 NYCRR 36~2.3[i] [4] [iv]; 36-2.3 [o] [2]; 36-2.3[r!] [1].) Subdivision i of section C 212-4.1 provides, 'in part, that ‘ ‘ Stairs or steps -shall have not less than three risers and shall have a guardrail on any open side ”, (9 NYCRR 821.4[a] [9].)
On June 13, 1964 claimants, accepting an invitation to attend a ceremony at Page Hall at 8:30 p.m. in which their daughter, Patricia, a graduating senior, was to participate, arrived at the main floor of the auditorium in that building at approximately 8:20 p.m. after having had dinner at the DeWitt Clinton Hotel. Mr, and Mrs. Robotham had both had a cocktail prior to the evening meal but had had no alcoholic beverage subsequent. Upon arriving at Page Hall, a building which faces Washington *365 Avenue but is situated on Western Avenue in the City of Albany, their daughter left them to dress for the ceremony and the two seated themselves in the balcony. They had ascended the stairs to the second floor foyer and then proceeded along a winding ramp which led to the left side of the balcony. Seating themselves, Mrs. Robotham arose to seek her daughter in the dressing room so that she could let the daughter know where the couple was seated. She walked down the ramp to the archway, facing the second floor foyer. As she went through the archway she fell forward on to the floor of the foyer on her outstretched right arm which she used to protect herself from injury. Mrs. Robotham said that the lighting was not bright, that she had been walking naturally and did not have to hurry and that she saw only one woman going up the ramp; also, that there was no one in front of her going into or out from the archway.
Following her fall, Mrs. Robotham managed to reach the stairway to the second floor and seated herself on a step. A friend of her daughter came and saw her there who then advised Mr. Robotham what had happened. Mr. Robotham arrived, his wife was placed in a chair and he with a friend carried her to a car and thence to Albany Hospital where she received emergency treatment from Dr. James Dougherty. Mrs. Robotham had sustained comminuted colles fracture of the right wrist which involved the radius of ithe ulna on the medial border with multiple fragments in the distal portion of the radius. She was obviously in distress at the time of the emergency treatment with pain, swelling and limitation of motion. As a result, Mrs. Robotham was given traction, the fracture was reduced and a long-arm cast from shoulder to finger tips was applied. Approximately one month later, the long-arm cast was removed, a short-arm cast was applied and Mrs. Robotham was referred to a therapist for treatment. The union of the fragments was good although the result is a silver fork deformity of the right wrist. Medical treatment was continued for approximately four months from the date of the episode during which Mrs. Robotham remained away from work.
Claimants maintained that the cause of the fall was the unnotice able step or riser, the tread of the archway, 614 inches higher than the floor of the foyer, which was not seen by Mrs. Robotham as she proceeded from the ramp through the archway to the second floor foyer and the same coloration at the top of the riser as the border of the foyer. Testimony revealed that the floor of the foyer was a terrazzo mixture, moderately light gray with *366 a 10-inch border at the wall of dark green marble; that the two slabs forming the floor or tread of the archway were likewise dark green marble. The floor of the winding ramp was lighter in color than that of the slabs at the archway.
Claimants’ professional engineering expert was not able to compute accurately the amount of light available from the ramp’s electric fixtures nor able to testify whether outside light from the three windows in the foyer opposing the archway presented difficulty on the night in question to the visibility of oncoming pedestrians. He maintained, however, that the lighting was of an order and intensity that no elevation change either at or approaching the archway would be visible because it is difficult to distinguish changes in depth of dark-colored marble; also, that a change in elevation is deceptive to an individual who does not have depth perception. He testified that at the site of the accident there were no warning devices or signs such as flashings, handrails, except that of an overhead lighted exit sign. It was his opinion that a single 'Step constituted a dangerous condition and that it should not exist isolated and apart in contravention of the Building Code of the State of New York. The dark marble used as a border in the foyer and for the tread portion of the riser in the archway was sufficiently deceptive to an individual who does not have depth perception and is not easily able to distinguish changes in depth, leaving the illusion of a single plane.
Mrs. Bobotham was an invitee who had never visited Page Hall prior to the evening in question. Therefore, the State owed her a duty of reasonable care. At the site of the instant accident, there was one riser, a type of construction not in accordance with the provisions of either code rule 36 or of the State Building Construction Code, requiring a flight of not less than three risers used to overcome differences in floor levels. The single step constituted a hazard which would entrap or ensnare the visitor who was not familiar with the change in elevation. The maintenance of this design without warning devices or handrails is negligence. The use of a single interior step composed of colored materials which provided the illusion of a single plane without the occurrence of previous accidents at the site does not in and of itself relieve the defendant of the responsibility of installing warning devices or relieve the defendant of the liability of notice. (Butler v. State of New York, 27 A D 2d 897.) Mrs. Bobotham was free from contributory negligence. The State had notice both actual and constructive. Even assuming, arguendo, that Page Hall was erected prior to the adoption of *367 code rule 36 of the Board of Standards and Appeals and of subdivision i of section C 212-4.1 of the State Building Construction Code promulgated by the State Building Code Council, the State is not relieved of responsibility and is liable in negligence even though the University of the State of New York had not been specifically advised that the one-step riser was a violation of the codes. The defendant, the State, is not relieved of liability when it fails to adopt and place into practice the safety rules established by any of its agencies. It cannot be exclusive of or outside the scope of the provisions of rules adopted for the safety of the citizenry and hold itself aloof from liability when damage occurs as the result of such exclusiveness or aloofness.
Paragraph 7(c) of section 604 of the National Board of Fire Underwriters Code, now known as the National Building Code, is not relevant.
The claimants have sustained the burden of proof.
Motions to dismiss made by defendant at the close of claimants’ proof and renewed at the close of the entire trial, upon which the court reserved decision, are hereby denied.
Accordingly, claimant Marion G. Robotham is awarded the sum of $14,750, of which $750 represents the value of lost wages for the time from June 13, 1964 to November 1, 1964 when she returned to her work as a nurses’ aide, with difficulty. To claimant George Robotham is awarded the sum of $2,723, of which $223 represents expenses for medical care and attention and travel expenses.